**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BLITZ TELECOM CONSULTING, LLC,**

       **Plaintiff/Counter Defendant,**

-vs-                                   **Case No.  6:11-cv-12-Orl-31KRS**

**BRETT MINGO and CHRISTOPHER VAN
DE VERG,**

       **Defendants/Counter
Claimants.**

_____

# ORDER

This matter comes before the Court without a hearing on the Motion for Summary

Judgment (Doc. 46) filed by Defendants Brett Mingo ("Mingo") and Christopher Van de Verg

("Van de Verg"), the Motion for Summary Judgment (Doc. 48) filed by the Plaintiff, Blitz

Telecom Consulting, LLC ("Blitz"), and the various responses and replies filed by the parties

(Doc. 58, 60, 63, 64).  The Defendants seek summary judgment as to the Plaintiff's claim for fraud

in the inducement, while the Plaintiff seeks summary judgment as to the Defendants' counterclaim

for negligence.

## I.    Background

As described in the Complaint (Doc. 2), the Defendants, who are residents of Maryland,

own and/or operate a number of entities in the telecommunications industry, including CoreTel

Communications, Inc., a Delaware corporation, and CoreTel Florida, Inc., a Florida corporation.

Beginning in 2008, Mingo and Van de Verg began discussing with one of the principals of Blitz,

Robert Russell ("Russell"), a possible business venture between Blitz and one or more of the CoreTel entities controlled by Mingo and Van de Verg.  Russell and entities he controlled had previously engaged in other telecommunications ventures with Mingo and Van de Verg and the various companies they controlled, and some of those ventures were ongoing during this time frame.

The potential venture at issue in this case would have involved Blitz "assist[ing] the Defendants and CoreTel in establishing voice traffic and customers through CoreTel [Communications, Inc.] equipment and network systems."  (Doc. 2 at 2).  The parties engaged in these discussions – henceforth, the "Voice Traffic Negotiations" – from August 2008 to February 2010, when talks broke down.  On November 30, 2010, Blitz filed the instant suit, contending that the Defendants never intended to enter into the venture that was the subject of the Voice Traffic Negotiations, and that those negotiations were simply a ruse intended to induce Blitz into providing money, equipment and expertise.

While the Voice Traffic Negotiations were ongoing, Blitz loaned the Defendants $250,000, and the Defendants executed a promissory note in regard to that loan.  The Defendants paid off the note on March 11, 2011, just prior to the deadline for payment.  Five days later Blitz, apparently not realizing that the payment had been made, filed a confessed judgment action on the note in Maryland state court.  On April 27, 2011, the Defendants filed a counterclaim (Doc. 27) against Blitz, alleging that the filing of the confessed judgment action constituted negligence and a breach of the promissory note.

## II.     Legal Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.  The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Analysis**

    **A.   Plaintiff's Motion**

The parties agree that the Defendants' counterclaim[1] regarding the confessed judgement action is governed by the law of Maryland, where that action was filed.  The Plaintiff argues that Maryland does not recognize a cause of action for the negligent filing of a lawsuit.  (Doc. 48 at 1).  The Plaintiff also argues that the counterclaim is barred by the doctrines of res judicata and collateral estoppel and that the Defendants have no evidence of damages.

It is clear that the Plaintiff's arguments regarding res judicata and collateral estoppel are meritless.  In the Maryland suit, the Defendants argued that Plaintiff's filing of the action violated Maryland Rule 1-341, which provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including the reasonable attorneys' fees, incurred by the adverse party in opposing it.

*Id.*  The Maryland judge disagreed with the Defendants here, finding that the Maryland action was not filed in bad faith or without substantial justification.  (Doc. 48-10 at 6).  The Plaintiff argues that this finding precludes the counterclaim under the doctrines of res judicata and collateral estoppel.  However, the doctrine of res judicata prevents parties from filing a second claim that is identical to the one determined in a previous action.  *See, e.g.*, *Gonsalves v. Blingel*, 5 A.3d 768 (2010).  Under Maryland Rule 1-341, the complaining party must show that the other party acted

---

[1]The counterclaim originally consisted of two counts, one for negligence and one for breach of contract, but the breach of contract claim was dismissed on August 30, 2011.  (Doc. 41).

"in bad faith and without substantial justification", whereas the plaintiff in a negligence case is

must only show that the other party breached a duty toward him or her.  In the words of

Maryland's highest court, "'Bad-faith' is the opposite of good faith; it is not simply bad judgment

or negligence, but implies a dishonest purpose or some moral obliquity and a conscious doing of

wrong." *Rite Aid Corp. v. Hagley*, 824 A.2d 107, 116 (Md. 2003) (citing *Vickers v. Motte*, 137

S.E. 2d 77, 80 (1964)).  A claim that Blitz acted negligently falls far short of a claim that Blitz

acted in bad faith, and therefore the resolution of the Rule 1-341 motion is no bar to a subsequent

negligence claim.  Similarly, the doctrine of collateral estoppel prevents relitigation of issues that

have previously been decided.  *See, e.g.*, *Colandrea v. Wilde Lake Community Association, Inc.*,

761 A.2d 899 (Md. 2000).  The Maryland court decided the issue of whether the confessed

judgment action was filed in bad faith, but the issue as to whether the action was filed negligently

remains unresolved.

However, it is not clear whether Maryland law recognizes a cause of action for the

negligent filing of a lawsuit.  The Plaintiff relies on the case of *State of Maryland v. Rendelman*,

947 A.2d 546 (Md. 2008) as standing for the proposition that no such cause of action exists under

Maryland law.  In that case, Maryland's highest court upheld an appellate court's reversal of an

extortion conviction where the "extortion" consisted of a threat to bring a civil action.  *Id.* at 547.

In considering whether a threat to file a wrongful suit could ever constitute extortion, the

*Rendelman* court noted that "there are several 'extraordinary' civil remedies for frivolous lawsuits,

including Maryland Rule 1-341 and the torts of abuse of process and malicious use of process."

*Id.* at 556 n.9.  The Plaintiff asserts that this statement demonstrates that these are the "only three

remedies available under Maryland law for the wrongful or frivolous filing of a lawsuit," (Doc. 48

at 13), but the plain language of the cited case belies any such conclusion.  In context it is clear

that the *Rendelman* court was only considering the wrongfulness of *intentionally* filing an

improper suit and had no reason to consider whether Maryland law provided for a cause of action

against someone who negligently filed suit.  The *Rendelman* court had no reason to assess the

wrongfulness of a negligent filing, and therefore its failure to discuss negligent filing cannot be

taken as an indication that Maryland law does not recognize such a tort.

      However, the court need not resolve this issue, because the Plaintiff has failed to provide

any evidence from which a reasonable factfinder could conclude that they have suffered damages

as a result of the filing of the Maryland confessed judgment action.  The only allegation of

damages in the counterclaim was that the confessed judgment "remains a cloud on [Defendants']

credit and property titles."  (Doc. 29 at 3).  The evidence shows that the confessed judgment was

vacated.  (Doc. 48-10 at 6-7).  Defendants have not produced credit reports or anything of a

similar nature to show that the now-vacated action remains part of their credit history.  Even

assuming that it is, the Defendants have produced no evidence that they will pay higher interest

rates as the result of its appearance.  Similarly, the Defendants have not produced any evidence

that they paid a higher interest rate before the confessed judgment was vacated.  Defendant Van de

Verg testified that one potential lender suggested that he ought not to go forward with an

application for credit to buy a new house, because the lender "didn't understand what the Blitz

entry [on Van de Verg's credit report] represented, and he was concerned that if we did apply for a

mortgage, we would be denied."  (Doc. 48-12 at 4).  Even if this hearsay were admissible, a

statement that one potential lender did not understand the entry is not evidence suggesting that the

Defendants would pay higher rates as a result, particularly now that the judgment has been

vacated.  Because the Defendants have failed to produce evidence of damages, the Court will grant summary judgment in favor of the Plaintiff on the counterclaim.

### B.        Defendant's Motion

The Plaintiff's claim is not labeled in the Complaint.  Assuming it to be a claim for fraud, the Defendants filed an early motion to dismiss (Doc. 6) based on, *inter alia*, the Economic Loss Rule, which bars tort actions to recover solely economic damages for those in contractual privity. (Doc. 6 at 9-12).  *See, e.g.*, *Indemnity Ins. Co. v. American Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004).  The Plaintiff responded, in part, by clarifying that his pleading contained "a single cause of action for Fraud in the Inducement."  (Doc. 15 at 1).  The Plaintiff also asserted that no agreement had ever been reached in regard to the Voice Traffic Negotiations: "The basis of Plaintiff's claims is and has always been that there was no contract because the contract never came to fruition because Defendants never intended to contract with Plaintiff and misled Plaintiff."  (Doc. 60 at 11-12).  In the absence of a contract, the Defendants could not establish that the Economic Loss Rule barred the Plaintiff's claim, and so the motion to dismiss was denied. (Doc. 21 at 5).

The Defendants now offer an even simpler argument: In the absence of a contract, there can be no claim for fraud in the inducement.  *See, e.g.*, *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 772 F.Supp. 1225, 1238 (N.D.Fla. 1991) ("Fraud in the inducement, however, addresses a situation where the claim is that one party was tricked into contracting.") *and see In re NAL Fin. Group Inc.*, 237 B.R. 225, 231 (" Logically, there can be no ... fraudulent inducement without a contract into which a party was fraudulently induced to enter.").  The Plaintiff offers no rebuttal to

this argument, and the Court's research has not uncovered any.  The Defendants are entitled to summary judgment as to the Plaintiff's claim.

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 46) filed by Defendants Brett Mingo and Christopher Van de Verg is **GRANTED**, and the Motion for Summary Judgment (Doc. 48) filed by the Plaintiff, Blitz Telecom Consulting, LLC, is also **GRANTED**.  The Clerk is directed to enter judgment in favor of Brett Mingo and Christopher Van de Verg and against Blitz Telecom Consulting, LLC as to the claim asserted in the Complaint, and to enter judgment in favor of Blitz Telecom Consulting, LLC **and** against Brett Mingo and Christopher Van de Verg as to their counterclaim, and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 18, 2012.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party